**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**TINA ROSE,**

**Plaintiff,**

**v.**

**STATE OF ILLINOIS, by and through its Judicial Branch, including the Second Judicial Circuit and the Franklin County Circuit Court,**

**Defendant.**

**Case No. 3:25-CV-1207-NJR**

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 17). *Pro se* plaintiff Tina Rose sues Defendant State of Illinois under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, alleging that she has experienced discrimination and retaliation during the course of over two dozen proceedings in state court. (Docs. 2; 10). Illinois argues that the Court does not have jurisdiction to hear this case under the *Rooker-Feldman* doctrine, that Ms. Rose's claims are barred by absolute judicial immunity, that the Court should abstain under the *Younger* doctrine or similar principles of federal-state comity, and that Ms. Rose's allegations are legally insufficient. (Doc. 17). Ms. Rose has filed a response arguing that her complaint should not be dismissed or, if it is dismissed, that she should be given an opportunity to amend her complaint. (Doc. 19). For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following facts from the complaint are taken as true for the purposes of Illinois's motion to dismiss.

Since August 2024, Ms. Rose has either filed or been a party to 29 cases in Illinois's Second Judicial Circuit, primarily in Franklin County, where she lives. (Doc. 2, at 3). Some of these cases are civil; some are "quasi-criminal." *Id.* As far as this Court can tell, most or all of the 29 state court cases arise out of disputes between Rose, her landlord, and city officials. *See id.* at 5.

Ms. Rose has been dissatisfied with the way the state court proceedings have progressed. She has multiple disabilities, including Post Traumatic Stress Disorder, Generalized Anxiety Disorder, Attention Deficit Hyperactivity Disorder, and chronic pain disorders. *Id.* at 3. Due to these disabilities, she requested accommodations to enable her to access court services and proceedings. *Id.* 3–6. For instance, she requested permission to use something called "ADA notes." *Id.* at 4. (While Ms. Rose does not list all of the accommodations she requested, she does note that the Franklin County Courthouse lacks an "ADA Advocate" and has no "handicap accessible functions" for its front door.) *Id.* at 6.

But Ms. Rose did not receive her requested accommodations. Instead, she alleges that her requests were denied and she was retaliated against for having made those requests—both in violation of the ADA. *Id.* at 3–7, 10–21. Ms. Rose's complaint is a little disorganized and sometimes provides legal conclusions rather than allegations of fact; however, as far as the Court can discern, the discriminatory and retaliatory acts Ms. Rose

endured include the following:[1]

- Refusal by state court judges to hear motions for ADA accommodations until after delays of up to ten months, *id.* at 3–4;
- Refusal by state court judges to hear motions for ADA accommodations at all, *id.* at 4;
- Insistence by state court judge that Ms. Rose provide live medical testimony to establish her need for accommodations, *id.* at 4, 14–15, 20;
- Anti-disability ridicule from a state court judge, *id.*;
- Refusal by state court judge to permit Ms. Rose to use ADA notes in the courtroom during a preliminary protective order hearing, *id.* at 4, 21;
- Refusal by state court judge to assign professional mediator to assist Ms. Rose in negotiations, *id.* at 4, 12–13, 16;
- Order by state court judge consolidating three different hearings despite Ms. Rose's request for three hearings, causing her to endure physical reactions and to eventually faint, *id.* at 5;
- Denial by state court judge of request to record hearings, *id.* at 12;
- Refusal by state court judge to allow unspecified ADA accommodations, *id.* at 18; and
- Exhibition of hostility toward Ms. Rose by state court judges after she requested ADA accommodations. *Id.*, *passim*.

After screening Ms. Rose's complaint under 28 U.S.C. § 1915(e)(2) and permitting it to proceed on her ADA claims, this Court directed service on Illinois. (Doc. 10).[2] Illinois has now filed its motion to dismiss, arguing that it is immune from suit, that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine (or, if it has jurisdiction, it should abstain from exercising it), and that Ms. Rose has failed to state a claim on which relief can be granted.

---

[1] Ms. Rose's complaint originally sought relief on two additional claims that have since been dismissed: one under 42 U.S.C. § 1983 for violations of the Constitution, and one under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* (Doc. 2; *see* Doc. 10). Some of the misconduct she alleges in her complaint appears to be related to those two claims rather than disability discrimination or retaliation. To the extent that Ms. Rose feels some of her factual allegations were incorrectly considered unrelated to her ADA claims, she is welcome to re-allege them in an amended pleading.

[2] *See also Rose v. Illinois*, No. 25-CV-1207, 2025 WL 3153411 (S.D. Ill. Nov. 12, 2025).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). To survive a Rule 12(b)(6) motion, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.*

Motions to dismiss under Rule 12(b)(1), which "provides that a case will be dismissed if the court lacks the authority to hear and decide the dispute," are "analyze[d] . . . as any other motion to dismiss."[3] *Gonzalez v. Bank of America, N.A.*, No. 13 CV 3463, 2014 WL 26283, at *2 (N.D. Ill. Jan. 2, 2014) (first citing FED. R. CIV. P. 12(b)(1); and then citing *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc)). Thus, when analyzing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court "must accept as true all well-

[3] With the exception (not relevant here) that, if a complaint formally and facially satisfies jurisdictional requirements but the underlying facts do not, motions under Rule 12(b)(1) can be decided with reference to materials outside the complaint itself. *E.g.*, *Gonzalez v. Bank of America, N.A.*, No. 13 CV 3463, 2014 WL 26283, at *2 (N.D. Ill. Jan. 2, 2014) (first citing Fed. R. Civ. P. 12(b)(1); and then citing *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc)).

pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)).

## DISCUSSION

### I. Subject matter jurisdiction

The Court first addresses Illinois's objection under the *Rooker-Feldman* doctrine, which "precludes federal district-court jurisdiction 'over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced.'" *Bauer v. Koester*, 951 F.3d 863, 866 (7th Cir. 2020) (quoting *Sykes v. Cook Cty. Circuit Court Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016)) (citing *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014)); *see also Continental Indemnity Co. v. BII, Inc.*, 104 F.4th 630, 636 (7th Cir. 2024) ("Subject matter jurisdiction is the first issue in any case . . . ." (quoting *Miller v. Southwest Airlines Co.*, 926 F3d 898, 902 (7th Cir. 2019))). The doctrine therefore "requires a party seeking review of a state court judgment or presenting a claim that a state judicial proceeding has violated their constitutional rights to pursue relief through the state court systema and ultimately to the Supreme Court." *Long*, 182 F.3d at 554; *see also, e.g.*, *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996) (explaining that *Rooker-Feldman* is based on "the principle that only the Supreme Court has appellate jurisdiction over the civil judgments of state courts" (citations omitted)).

The *Rooker-Feldman* doctrine

> blocks federal jurisdiction when four elements are present. *First*, the federal plaintiff must have been a state-court loser. *Second*, the state-court judgment must have become final before the federal proceedings began. *Third*, the

> state-court judgment must have caused the alleged injury underlying the federal claim. *Fourth*, the claim must invite the federal district court to review and reject the state-court judgment.

*Gilbank v. Wood Cnty Dep't of Human Servs.*, 111 F.4th 754, 766 (7th Cir. 2024) (en banc).

Illinois argues that the doctrine precludes jurisdiction over at least some portion of Ms. Rose's claims. (Doc. 17, at 7–8). First, Illinois correctly points out that much of Ms. Rose's complaint arises out of the alleged decisions of judges in 29 state court cases. Three of those cases have proceeded to final judgment. Accordingly, by challenging the adverse decisions in those cases (e.g., to deny Ms. Rose ADA accommodations), she is effectively attempting to appeal those decisions in this Court, thus implicating the doctrine.

But Illinois is incorrect, even as to the three cases that have proceeded to final judgment. The *Rooker-Feldman* doctrine does not preclude this Court's jurisdiction because the doctrine does not apply to interlocutory orders. *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018); *see also T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1765 (2026) (Barrett, J., dissenting) ("As the Court concedes, the doctrine applies only to 'state-court judgments'; it does not bar district courts from reviewing state-court interlocutory orders." (quoting *T.M.*, 146 S. Ct. at 1744 (majority opinion))). Ms. Rose does not ask this Court to review or reject any state court judgment as violating the ADA. Rather, her complaint arises out of the interlocutory orders and conduct of Illinois judges during the course of state court proceedings. Accordingly, the doctrine's elements are unsatisfied, and *Rooker-Feldman* does not bar this Court's jurisdiction.

## II. Abstention under *Younger* or other doctrines

Disposing of Illinois's *Rooker-Feldman* objection does not end the jurisdictional inquiry. Illinois also argues that, even if jurisdiction technically exists, this Court ought to abstain from exercising it. In support of this argument, it first invokes the doctrine of *Younger* abstention. Then, perhaps sensing that *Younger* is (like *Rooker-Feldman*) an imperfect fit, Illinois relies on a sort of composite abstention doctrine recently espoused by the Seventh Circuit in *J.B. v. Woodard*, 997 F.3d 714, 720–25 (7th Cir. 2021) (holding abstention was proper "under the foundational principles of our federal system," even though "none of the abstention doctrines" in isolation were "a literal or perfect fit"). The Court concludes that this latter abstention doctrine, which the Court refers to as "*Woodard* abstention," applies to this case.

Illinois first argues that this Court should abstain from exercising jurisdiction under *Younger*, which "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state court proceedings." *Woodard*, 997 F.3d at 722 (citing *Younger v. Harris*, 401 U.S. 37, 43–44 (1971)). The doctrine applies "where federal court intervention would intrude" into (1) "ongoing state criminal proceedings," (2) "state-initiated civil enforcement proceedings akin to criminal prosecutions," or (3) "civil proceedings implicating a state's interest in enforcing orders and judgments of its courts." *Id.* (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013)). Underlying *Younger* abstention is the principle "that, absent extraordinary circumstances, a federal court should not interfere with pending state judicial proceedings." *Brunken v. Lance*, 807 F.2d 1325, 1330 (7th Cir. 1986) (citations omitted).

Illinois argues that *Younger* applies to the extent that Ms. Rose seeks relief which would interfere with 13 of the 29 cases she mentions in her complaint. (Doc. 17, at 8–9). Those 13 cases, it points out, are identified by Ms. Rose as involving "orders of protection," which Illinois argues fall under the third category of *Younger* abstention. *Id.*

Ms. Rose counters that she "does not seek to enjoin any specific pending state case" or "request an order directing how a state judge must rule." (Doc. 19, at 11). In her complaint, she asks for three primary forms of relief: a declaratory judgment that Illinois's courts violated federal law, compensatory damages of three million dollars, and "appropriate injunctive and structural relief to prevent future . . . ADA violations." (Doc. 2, at 6–7, 9). While she does not specify what she means by "appropriate" injunctive relief, *id.* at 9, Ms. Rose now avers that she is seeking "prospective compliance with federal disability law rather than intervention in the merits of an ongoing state proceeding." (Doc. 19, at 12). She further argues that, rather than dismissing her ADA claims in their entirety at the pleadings stage, this Court could "tailor" the forms of relief she requests "to avoid interference with any particular proceeding." *Id.*

Illinois argues, in the alternative, that *Woodard* abstention is appropriate in this case. (Doc. 17, at 9–11). In *Woodard*, the Seventh Circuit identified a line of cases in which none of the canonical abstention doctrines had applied but abstention was nonetheless merited. *Woodard*, 997 F.3d at 723–24. The through-line was respect for comity between federal and state courts: where a plaintiff requests federal intrusion into the administration of state courts, comity dictates that the federal court abstain. *Id.*

At first blush, this case seems like the poster child for *Woodard* abstention. Ms. Rose

takes issue with the decisions of judges in more than two dozen state court cases. Some of the decisions she objects to involve the minutia of docket management (such as the consolidation of hearings), a responsibility familiar to all courts, federal and state. To remedy her injuries from the myriad objected-to state court decisions, she asks this Court to (1) declare that Illinois has violated federal law, (2) award her three million dollars, and (3) issue "appropriate injunctive and structural relief" to prevent future ADA violations. Because the ADA violations were allegedly constituted by a wide array of state judicial decisions involving matters as anodyne as docket management, it is not unfair to imagine that "appropriate injunctive relief" would require this Court to effectively superintend the daily functioning of Illinois's state courts. Thus, Ms. Rose's request for relief would "directly affect[] the administration of" state courts and "run[s] contrary to the basic principles of equity, comity, and federalism." *Woodard*, 997 F.3d at 724 (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1070 (7th Cir. 2018)).

There is no doubt that *Woodard* abstention applies to at least some portion of Ms. Rose's claims; the tricky question is determining how much. For instance, Ms. Rose complains that the entrance to the courthouse does not comply with the ADA. Certainly neither an injunction requiring Illinois to modify that entrance nor an award of compensatory damages would interfere with any pending state court proceedings. But on the other hand, much the rest of Ms. Rose's complaint focuses on the orders of state court judges (e.g., denying her requests for accommodations). Nearly any relief predicated on individual state court decisions—compensatory, declaratory, or injunctive—would enable Ms. Rose to "shape—or perhaps change—the direction and

course" of those state court proceedings which remain pending. *Woodard*, 997 F.3d at 723; *see also Lopez v. Kubalanza*, No. 24 C 13340, 2025 WL 2306815, at *13 (N.D. Ill. Aug. 11, 2025) (applying *Woodard* to a plaintiff's requests for declaratory and monetary relief as well as to injunctive relief).

Another wrinkle: at least three of the state court proceedings giving rise to this suit are no longer pending. (Doc. 17, at 7–8; Doc. 2, at 11, 13). While Ms. Rose cannot secure prospective relief with respect to state judicial proceedings, the Court need not abstain from suits for compensatory damages arising out of completed state court proceedings under the *Woodard* or *Younger* doctrines. *See Woodard*, 997 F.3d at 724–25 (when compensatory damages are sought in an action subject to *Younger* abstention, courts should generally stay the case until the state court proceedings have finished). To the extent that Ms. Rose is seeking compensatory damages for those three proceedings, *Woodard* abstention does not apply; however, because Ms. Rose's complaint is not sufficiently specific in describing the relief she seeks, the Court cannot determine with any precision what portion of her claims arise out of state cases that are no longer pending.

Despite the lack of specificity in Ms. Rose's complaint, the Court finds that application of the *Woodard* abstention doctrine requires the following results:

1. To the extent that Ms. Rose seeks injunctive or declaratory relief with respect to any state court judge's decisions, conduct, or orders in a pending state court proceeding, the Court will abstain from exercising jurisdiction. Ms. Rose's claims to that effect are **DISMISSED without prejudice**.

2. To the extent that Ms. Rose seeks compensatory relief with respect to any state court judge's decisions, conduct, or orders in a pending state court

proceeding, the Court will abstain from exercising jurisdiction and **STAY** these proceedings in their entirety[4] until each such state court proceeding is no longer pending.

Neither *Younger* nor *Woodard* abstention would apply if, alternatively, Ms. Rose **only** sought (1) relief from injuries caused by something other than the decisions, conduct, or orders of state court judges, or (2) compensatory relief alone with respect to any state court judge's decisions, conduct, or orders in *non-pending* state court proceedings. If that were so, this case could proceed.[5]

As it stands, the Court reads Ms. Rose's complaint to seek compensatory relief with respect to the decisions, conduct, and orders of state court judges arising out of pending state court proceedings. As such, the proper disposition is to stay this case until all 29 state court cases have been resolved. **However, in light of Ms. Rose's status as a *pro se* litigant, the Court will first give Ms. Rose an opportunity to amend her complaint**.

Therefore, the Court **HOLDS IN ABEYANCE** its decision to stay this action. If Ms. Rose so chooses, she may amend her complaint to remove her requests for compensatory relief based on the decisions, conduct, or orders of state court judges in

[4] If Ms. Rose seeks compensatory relief based on any state court judge's judicial acts in any ongoing state court proceeding, this *entire* action will be stayed. This is because any partial stay would be impracticable to the point of being unmanageable. There are 29 cases addressed in Ms. Rose's complaint; these proceedings will never end if a new set of factual allegations suddenly springs to life each time one of the 26 pending state court cases is finalized. Judicial economy will best be preserved by litigating all of Ms. Rose's claims based on as-yet pending state court cases at the same time, which can only be accomplished by staying this action until each state court case has been resolved.

[5] Here, the Court does not reach Illinois's arguments on the merits or on judicial immunity precisely because it finds that, as Ms. Rose's complaint stands, the Court cannot exercise jurisdiction over an indeterminable portion of Ms. Rose's claims until there are no longer any pending state court proceedings at issue.

ongoing state court proceedings. If she successfully does so, no stay will be required. Therefore, the Court **ORDERS** Ms. Rose to either file an amended complaint or a notice stating her intention not to so amend **on or before August 28, 2026**.

If Ms. Rose does not choose to amend her complaint, or if her amended complaint continues to require *Woodard* abstention, the Court will stay this action until such time as the underlying state court proceedings for which Ms. Rose seeks compensatory relief have each become final. If such a stay is entered, this Court will order Ms. Rose to keep the Court informed of the status of the state-court proceedings.

Illinois's motion to dismiss is therefore **GRANTED in part and DENIED in part**. Ms. Rose's claims for injunctive and declaratory relief with respect to any state court judge's decisions, conduct, or orders in a pending state court proceeding are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

**DATED: August 14, 2026**

Nancy J. Rosenstengel

**NANCY J. ROSENSTENGEL**
**United States District Judge**